UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUINTERO HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-00630-JPH-KMB |
| | ) |
| D. ZATECKY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Quintero Hayes is pursuing Eighth Amendment claims based on allegations that the defendants were deliberately indifferent to repeated fires in his housing unit at Pendleton Correctional Facility in 2019 and his need for medical treatment afterward. Defendants have moved for summary judgment. For the reasons that follow, their motion is **granted in part and denied in part**.

## I.
## Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Background

Defendants served Mr. Hayes with the required notice to pro se parties advising him of his right to respond to the motion for summary judgment and that "a failure to properly respond will be the same as failing to present any evidence in your favor at a trial." Dkt. 57; S.D. Ind. L.R. 56-1(k). Despite that

notice, Mr. Hayes did not respond to the summary judgment motion. While Defendants "still ha[ve] to show that summary judgment is proper given the undisputed facts," *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up), the Court treats Defendants' supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f). *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions.").

### A. The fires at PCF

Between June 29 and July 31, 2019, Mr. Hayes was confined in the 6C range of G Cellhouse at PCF. During that time, there were five fires on the 6C range.

The first fire took place June 29 and burned for about 25 minutes before any staff member began efforts to extinguish it. Dkt. 34 at ¶¶ 15, 19. Fuel for the fire included Styrofoam meal trays. *Id.* at ¶ 17. After inhaling the smoke, Mr. Hayes experienced coughing, wheezing, dizziness, lightheadedness, and shortness of breath, and he lost consciousness and hit his head on the ground. *Id.* at ¶¶ 17, 21. After the fire, Mr. Hayes notified Warden Zatecky and Lieutenant Bagienski of the fire, the staff's slow response, his physical reaction to the smoke, and the fact that no smoke detectors or fire alarms sounded. *Id.* at ¶¶ 16–21.

The second fire took place the next day and burned for about half an hour. *Id.* at ¶ 24. Mr. Hayes experienced similar symptoms and again lost consciousness. *Id.* at ¶¶ 25–26. Following this fire, Mr. Hayes notified Warden

3

Zatecky and Lieutenant Bagienski of the fire, the staff's slow response, his physical reaction to the smoke, and the fact that no smoke detectors or fire alarms sounded. *Id.* at ¶¶ 28–32.

The third fire took place the following day, July 1, and burned for about 15 minutes. *Id.* at ¶¶ 36, 41. When the fire started, Caseworker T. Cochran was on the range, distributing mail and collecting papers from inmates. She did not immediately seek help but instead completed her rounds as the fire burned. Mr. Hayes told Ms. Cochran that he was experiencing chest pains, dizziness, lightheadedness, and shortness of breath. She said she would inform the custody staff of his condition once she finished her rounds, but Mr. Hayes was never seen by the medical staff. *Id.* at ¶¶ 36–45. Afterward, Mr. Hayes notified Safety Hazard Supervisor Wade Kent of the fires, the medical symptoms he experienced because of the fires, and the lack of working alarm systems in his unit. Mr. Kent acknowledged that there was not a working alarm system and that it took about 30 minutes for the prison staff to learn of fires in that unit. *Id.* at ¶¶ 46–51.

The fourth fire took place July 30 and burned for about 30 minutes. *Id.* at ¶ 53. While the fire was burning, Mr. Hayes told Officer Kendrick that he needed medical attention because he was experiencing chest pains, headaches, dizziness, lightheadedness, and shortness of breath. Officer Kendrick said he would contact the medical staff once the fire was extinguished. *Id.* at ¶¶ 54–55. About 20 minutes later, Officer Corey came onto the range, saw Mr. Hayes's condition, and took him to a shakedown booth so he could be escorted to the

medical department. *Id.* at ¶ 57. However, the officers left him in the shakedown booth and refused to let him out when nurses came to the range to treat the inmates. *Id.* at 58–60. Following this fire, Mr. Hayes notified Warden Zatecky of the fire, the staff's slow response, his physical reaction to the smoke, and the fact that no smoke detectors or fire alarms sounded. *Id.* at ¶¶ 61–64.

Two fires burned the following day for a total of about two hours. *Id.* at ¶ 64. After Officer Gray arrived on the range to put out the first fire, Mr. Hayes told him he was asthmatic and experiencing chest pains, dizziness, lightheadedness, and shortness of breath. *Id.* at ¶¶ 65–66. Officer Gray said he would call the medical staff, then come back to escort Mr. Hayes to the medical department, but he never returned. *Id.* at ¶¶ 67–68. About ten minutes later, the second fire started. Mr. Hayes's condition worsened, and inmates yelled that he was experiencing a medical emergency. *Id.* at ¶¶ 69–71. Like Officer Gray, Officer Dillon came to Mr. Hayes's cell and said he would call the medical staff, then return to escort him to the medical department. *Id.* at ¶¶ 72–74. While he was waiting, Mr. Hayes lost consciousness and fell. *Id.* at ¶¶ 75–78. He was never taken to the medical department or treated on the range. *Id.* at ¶ 79.

### B. Procedural history

The operative complaint in this case is Mr. Hayes's amended complaint, which raises Eighth Amendment claims against eight defendants. Dkt. 34.[1]

---

[1] Mr. Hayes originally filed a 77-page complaint against 106 defendants. Dkt. 1. After the Court dismissed insufficient claims and severed misjoined claims, *see* dkt. 17, Mr. Hayes chose to proceed in this case with the current claims, based on repeated fires in his housing unit, dkt. 18.

# III.
# Analysis

## A. Qualified immunity regarding the fires

Defendants argue that they are entitled to summary judgment on the affirmative defense of qualified immunity regarding the fires at PCF.[2] "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna,* 577 U.S. 7, 11 (2015). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)). Qualified immunity thus "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).

The "difficult part" of the qualified-immunity test is "identifying the level of generality at which the constitutional right must be clearly established." *Volkman v. Ryker,* 736 F.3d 1084, 1090 (7th Cir. 2013). A "high level of generality" is not appropriate; instead, the question is "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Id.*

---

[2] As noted below, Defendants do not argue that they may be entitled to qualified immunity on Mr. Hayes's claims that he was denied medical care for his medical concerns resulting from the fires. *See* dkt. 56 at 9.

When the affirmative defense of qualified immunity is raised, "the burden shifts to the plaintiff to defeat it." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). To meet that burden and overcome qualified immunity, the plaintiff must "show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713 (7th Cir. 2013). The failure to do so means a plaintiff "cannot defeat" a "qualified immunity defense." *Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) (reversing summary judgment grant because plaintiff did not identify a sufficiently analogous case or explain why defendant's actions were plainly excessive); *Soriano v. Town of Cicero*, 521 F. App'x 565, 567 (7th Cir. 2013).

Here, Defendants argue that they are entitled to qualified immunity regarding the fires because "[p]rison officials responded to and extinguished the small, isolated fires." Dkt. 56 at 8. They further contend that there is no "authority establishing a prisoner's right to be free from exposure to any smoke for a brief period after a small, contained fire." *Id.*

The Court exercises its discretion to begin with the "clearly established" prong of the test. *See Pearson*, 555 U.S. at 236; *Findlay*, 722 F.3d 895 at 899 (noting that the court is "free to consider first whether the right is clearly established if doing so will conserve judicial resources."). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The rule must be "dictated by "controlling authority" or "a robust consensus of cases of

7

persuasive authority." *Id.* (cleaned up). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

When Defendants invoked qualified immunity, it became Mr. Hayes's burden to defeat the defense. *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) ("Once the defense is raised, it becomes the plaintiff's burden to defeat it."). By failing to respond to Defendants' motion for summary judgment, Mr. Hayes has failed to identify a sufficiently analogous case dealing with facts similar to this lawsuit, nor has he explained why Defendants' actions were so obviously violative of the Eighth Amendment that any reasonable person would have recognized them as such. *See Findlay*, 722 F.3d at 900. As the Seventh Circuit has explained, that's fatal to overcoming a qualified immunity defense. *Id.*; *Soriano*, 521 F. App'x at 567.

Moreover, the Court's review of Eighth Amendment case law indicates that Mr. Hayes did not have a "clearly established" right to be free from temporary exposure to smoke and fumes from fires lit by inmates until prison staff were able to respond, or that any violation was "so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Leiser*, 933 F.3d at 701. Courts must give "wide-ranging deference to prison administrators" on issues of "internal order" and "institutional security." *Gevas v. McLaughlin*, 798 F.3d 475, 485 (7th Cir. 2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). So some delay in identifying or responding to fires is insufficient to overcome qualified immunity. Therefore, in *Sibley v. Dart*, the court found no Eighth

8

Amendment violation when the plaintiff alleged that correctional officers took 20–30 minutes to respond to a fire. 435 F. Supp. 3d 920, 928 (N.D. Ill. 2019) ("Plaintiff cites no authority, and the Court is not aware of any, suggesting that a 20- to 30-minute response time to smoke in a maximum-security tier of a jail was objectively unreasonable. Nor can the Court say that as a matter of law, calling supervisors to alert them of smoke, or waiting for backup before releasing and evacuating a tier full of maximum-security detainees, is objectively unreasonable."). The *Sibley* court also explained that even if there could have been a constitutional violation, "the Defendant Officers would be entitled to qualified immunity" because the plaintiff did "not cite . . . any authority" showing that a right to be free from temporary fires was clearly established. *Id.* at 933.

For these reasons, Defendants are entitled to qualified immunity as to Mr. Hayes's Eighth Amendment claims related to the fires themselves at PCF.

**B. Claims of failure to provide medical care**

Defendants raised qualified immunity only as to the fires and related smoke exposure—they did not argue that they may be entitled to qualified immunity on Mr. Hayes's claims that he was denied medical care for individual, serious medical concerns from the fires. *See* dkt. 56 at 9. Instead, Defendants cited Mr. Hayes's verified complaint to argue that they're entitled to summary judgment on the merits because they were not deliberately indifferent to his serious medical needs. *Id.* at 7–8. Because Defendants have designated Mr. Hayes's amended complaint as evidence on the medical care claims, the Court

9

considers it as evidence in evaluating whether summary judgment is appropriate.

"Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas*, 2 F.4th at 721–22. "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Defendants do not dispute that Mr. Hayes experienced serious medical needs during the fires. And the verified amended complaint provides evidence that Mr. Hayes experienced chest pains, dizziness, lightheadedness, and shortness of breath during the fires, and lost consciousness during two of them. Courts have found serious medical conditions implicating the Eighth Amendment on similar facts. *See, e.g., Sibley*, 435 F. Supp. 3d at 926–27 (finding serious medical condition based on allegations of chest pains, difficulty breathing, and loss of consciousness) (citing *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 423 (7th Cir. 2017) (""Failure to breathe and failure to regain consciousness are undoubtedly life-threatening medical conditions that are obvious to a layperson.").

Defendants argue instead that Mr. Hayes "has failed to show that Defendants were deliberately indifferent to his medical condition." Dkt. 56 at 7. Deliberate indifference requires more than negligence or even objective

10

recklessness. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). To survive summary judgment, the plaintiff must "provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id.* This occurs when the defendant causes "an inexplicable delay in treatment which serves no penological interest." *Id.* at 730.

Under this standard, Defendants Zatecky, Bagienski, and Kent are entitled to summary judgment. Mr. Hayes has not designated evidence that he told any of these defendants about the symptoms he suffered due to the fires during his medical emergencies. His interactions with them occurred after the fact. They could not have disregarded his needs for emergency medical care because they did not learn about his needs while the emergencies were ongoing. And to the extent Mr. Hayes told these administrators about medical problems when he was not experiencing a medical emergency, the Eighth Amendment did not obligate them to ensure that he received treatment when Mr. Hayes could instead interact with the medical staff through the appropriate channels for him to do so. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."); *see also Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019).

Ms. Cochran is not entitled to summary judgment. There's evidence that Mr. Hayes told her that he was experiencing chest pains, dizziness, lightheadedness, and shortness of breath as the third fire burned. Ms. Cochran stated she would inform the custody staff that he needed medical attention. Dkt. 34 at ¶ 40. Generally, a nonmedical staff member fulfills her obligations under

11

the Eighth Amendment by promptly communicating an inmate's condition to a medical professional who can determine whether (or what) treatment is necessary. *E.g., Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("Perhaps it would be a different matter if Miller had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns."). But Ms. Cochran continued passing out and collecting mail and papers for 15 minutes as the fire burned. *Id.* at ¶¶ 40–41, and Mr. Hayes never received medical attention. That evidence allows a reasonable jury to infer that Ms. Cochran disregarded Mr. Hayes's needs instead of communicating them to staff members who could help. *See Lewis v. McLean*, 864 F.3d 556, 565 (7th Cir. 2017) (denying summary judgment where "[v]iewing the facts in the light most favorable to Lewis, Cichanowicz and McLean encountered an inmate in severe distress, sobbing in pain and complaining that he was unable to move, and did, literally, nothing.").

Officers Kendrick and Corey also are not entitled to summary judgment. According to the verified amended complaint:

- Mr. Hayes told Officer Kendrick that he needed medical attention because he was asthmatic and was experiencing chest pains, headaches, dizziness, lightheadedness, and shortness of breath. Dkt. 34 at ¶ 54.

- Officer Kendrick said he would contact the medical staff once the fire was extinguished. *Id.* at ¶ 55.

- About 20 minutes later, Officer Corey saw Mr. Hayes' condition and became concerned enough that he took Mr. Hayes to a shakedown booth so he could be escorted to the medical department. *Id.* at ¶ 57.

12

- Nevertheless, once nurses arrived in the unit, the officers left him in the shakedown booth and refused to let him out when nurses came to the range to treat the inmates. *Id.* at ¶ 60.

On this record, a jury could reasonably find that Officers Corey and Kendrick knew that Mr. Hayes had a serious need for emergency medical treatment and actively prevented him from receiving it. *Cf. Lewis*, 864 F.3d at 565.

Finally, Officers Gray and Dillon are not entitled to summary judgment. According to the amended complaint, Mr. Hayes told Officer Gray him he was asthmatic and experiencing chest pains, dizziness, lightheadedness, and shortness of breath. *Id.* at ¶¶ 65–66. Officer Gray said he would call the medical staff, then come back to escort Mr. Hayes to the medical department, but he never returned. *Id.* at ¶¶ 67–68. His condition worsened, and inmates yelled that he was experiencing a medical emergency. *Id.* at ¶¶ 69–71. Like Officer Gray, Officer Dillon came to Mr. Hayes's cell, received the same information, and said he would call the medical staff and then return to escort him to the medical department. *Id.* at ¶¶ 72–74. Neither officer returned, Mr. Hayes never received medical attention, and in fact he lost consciousness and fell. *Id.* at ¶¶ 75–79. As with Ms. Cochran, a jury could reasonably infer from the fact that Mr. Hayes never received medical attention that Officers Gray and Dillon acted with deliberate indifference because they knew he was in urgent need of medical care but never followed through to provide the information to the staff members who could help him. *See Greeno*, 414 F.3d at 656; *Lewis*, 864 F.3d at 565.

13

# V.
# Conclusion

Defendants' motion for summary judgment is **granted in part and denied in part**. Dkt. [50]. Summary judgment is **granted** as to all claims against Defendants Zatecky, Bagienski, and Kent. No partial final judgment will issue. The **clerk is directed** to terminate these three defendants from the docket.

Summary judgment is **denied** to Defendants Cochran, Corey, Kendrick, Gray, and Dillon as to claims that these defendants were deliberately indifferent to Mr. Hayes's serious medical needs.

The docket reflects no filings by Mr. Hayes since October 13, 2022, dkt. 62. He **shall have through October 2, 2023**, to file a status update addressing (1) whether he wishes to continue pursuing this case, and (2) if so, whether he wishes to renew his motion for assistance with recruiting counsel, dkt. 48. If he renews that motion, he must attach a current inmate trust statement to demonstrate that he is unable to retain counsel. *See* dkt. 10 (payment of $402.00 filing fee).

**SO ORDERED.**

Date: 9/5/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

QUINTERO HAYES
213543
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com